IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JASON M.,[1]                                              No. 6:19-cv-0671-HZ

                            Plaintiff,                    OPINION & ORDER

        v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                            Defendant.


Kevin Kerr
Schneider Kerr & Robichaux
P.O. Box 14490
Portland, OR 97293

        Attorney for Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Sarah Moum
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Jason M. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court reverses the Commissioner's decision and remands this case for further administrative proceedings.

**PROCEDURAL BACKGROUND**

      Plaintiff applied for DIB and SSI on April 15, 2015, alleging an onset date of February 12, 2012. Tr. 15.[2] Plaintiff's date last insured is June 30, 2017. Tr. 18. His application was denied initially and on reconsideration. Tr. 15.

      On January 14, 2018, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 45. On March 14, 2018, the ALJ found Plaintiff not disabled. Tr. 36. The Appeals Council denied review. Tr. 1.

**FACTUAL BACKGROUND**

      Plaintiff alleges disability based on a groin injury, walking and lifting restrictions, lower back arthritis, "bad knees," attention deficit hyperactivity disorder ("ADHD"), depression, and

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 7.

anxiety. Tr. 433. At the time of the alleged onset date, he was 41 years old. Tr. 35. He has a high

school education and past relevant work experience as an automobile mechanic, transmission

mechanic, and building maintenance repairer. Tr. 34-35.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step

procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases,

agency uses five-step procedure to determine disability). The claimant bears the ultimate burden

of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in

"substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137,

140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines

whether the claimant has a "medically severe impairment or combination of impairments."

*Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not

disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly

or in combination, meet or equal "one of a number of listed impairments that the [Commissioner]

acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141;

20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if

not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the Commissioner meets his burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after his alleged onset date through his date last insured. Tr. 18. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine; asthma; ADHD, major depressive disorder, and generalized anxiety disorder. *Id.* However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 19.

At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the following limitations:

> [T]he claimant can never climb ladders, ropes or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, or crawl; and occasionally use foot controls bilaterally. The claimant can have occasional exposure to vibration, extreme cold temperatures, and concentrated levels of dust, fumes, gases, or poor ventilation. The claimant is able to understand, remember and carry out detailed but not complex instructions; can perform predictable tasks, which are not in a fast-paced production type environment; can deal with occasional workplace changes; can interact with the general public and co-workers in close proximity on an occasional basis (this does not include interaction over the telephone, which can occur more than an occasional basis).

Tr. 22. Because of these limitations, the ALJ found that Plaintiff could not perform his past

relevant work. Tr. 34. But at step five, the ALJ found that there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform, such as "addresser," "document

preparer," and "call out operator." Tr. 35. Thus, the ALJ concluded that Plaintiff is not disabled.

Tr. 36.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the

Commissioner's findings "are based on legal error or are not supported by substantial evidence

in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal

quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a

whole, including both the evidence that supports and detracts from the Commissioner's decision.

*Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is

susceptible to more than one rational interpretation, the ALJ's decision must be affirmed."

*Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v.

Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either

a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal

quotation marks omitted).

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) finding Plaintiff's headaches were not a severe

impairment at step two and failing to find his impairments meet or equal the severity of a listed

impairment at step three; (2) rejecting his subjective symptom testimony; (3) improperly

discounting the lay witness testimony; (4) giving reduced weight to the medical opinion

evidence; and (5) failing to conduct a proper step five analysis. The Court discusses each in turn.

## I.    Steps Two and Three

The step two inquiry is a *de minimis* screening device used to dispose of groundless

claims. *Yuckert*, 482 U.S. at 153-54. The claimant bears the burden of establishing that he has a

severe impairment at step two by providing medical evidence. 20 C.F.R. § 404.1512. An

impairment or combination of impairments is "not severe *only if* the evidence establishes a slight

abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v.*

*Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis in original) (citation omitted). The ALJ is

required to consider the combined effect of all the claimant's impairments on her ability to

function. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Thus, if the

ALJ determines that a claimant has a severe impairment at step two, the sequential analysis

proceeds and the ALJ must continue to consider all of the claimant's limitations, severe or not.

SSR 96-8p, 1996 WL 374184 (July 2, 1996). Where an ALJ fails to identify a severe impairment

at step two, but nonetheless considers at subsequent steps all of the claimant's impairments,

including the erroneously omitted severe impairment, the error at step two is harmless. *See Lewis*

*v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Here, the ALJ made two findings relevant to Plaintiff's migraines/headaches. First, the

ALJ found Plaintiff's allegation of migraines was not medically determinable as there was no

medical evidence to substantiate that Plaintiff's headaches were migraine in nature. Tr. 19.

Second, the ALJ found Plaintiff's headaches non-severe because there was no evidence

indicating that they caused any significant work-related limitations. *Id.* Plaintiff challenges only

the latter finding and argues the ALJ should have found his headaches severe because he reported them to his medical providers in August 2016 and again in May 2017. Tr. 1016, 1028.

Plaintiff's occasional reports of headaches, however, does not indicate that they had more than a minimal effect on his ability to work. As the ALJ noted, there was no medical evidence establishing Plaintiff's headaches caused any functional limitation. Tr. 19. Contrary to Plaintiff's assertion that his headaches require him to lie down in a dark room during the day, three to four times per month, he never reported such limitation to his doctors. Rather, Plaintiff initially reported in August 2016 that his headaches occurred at night two to three times per week, not during the day. Tr. 1028. In May 2017, he reported experiencing daily headaches that would eventually subside, but he never mentioned needing to lie down in a dark room for treatment. Tr. 1016. And despite seeing his primary care provider numerous times after the May 2017 appointment, Plaintiff did not report any ongoing issues with headaches. *See*, *e.g.*, Tr. 1002-14. Accordingly, the ALJ did not err in finding Plaintiff's occasional reporting of headaches indicated they were non-severe. *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii) (an impairment "must have lasted or must be expected to last for a continuous period of at least 12 months" to be considered severe).

Moreover, even assuming the ALJ erred, that error was harmless. Plaintiff argues that the ALJ finding his headaches non-severe prejudiced the remainder of the analysis because the ALJ failed to consider the absenteeism, need to lie down during the day, and cognitive interruptions caused by his headaches. However, those alleged limitations are based solely on Plaintiff's hearing testimony, which, as discussed more below, the ALJ properly discounted. Tr. 80-81. Accordingly, the ALJ's step two finding will not be disturbed.

Plaintiff next argues the ALJ erred at step three by failing to discuss whether he satisfied Listing 11.02 (epilepsy) in light of his migraines/headaches. Plaintiff also summarily asserts that the ALJ erred in finding his impairments did not meet or medically equal the criteria of Listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.11 (neurodevelopmental disorders). At step three, the ALJ determines whether a claimant's impairment meets or equals one of the impairments listed in the SSA regulations and deemed "so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). At step three, the burden is on the claimant to produce medical evidence sufficient to establish each of the characteristics for the listed impairment. *Yuckert*, 482 U.S. at 146 n. 5.

Plaintiff's assertion of error as to Listing 11.02 hinges on his argument that the ALJ erred by failing to find his headaches severe at step two. As just explained, the ALJ did not err in that regard. In addition, Plaintiff does not offer any argument or theory explaining how his impairments meet any of his cited Listings. *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (finding the ALJ's listing analysis was not erroneous where the claimant "offered no theory, plausible or otherwise, as to how his [impairments] combined to equal a listed impairment."). Plaintiff cannot meet his burden at step three by simply declaring that he meets the listed impairments. He must point to objective medical evidence in the record that shows he meets all the medical prerequisites for each listing. Because he failed to do so, the Court finds the ALJ did not err at step three.

## II.    Subjective Symptom Testimony

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal

relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons") (quotation marks and citation omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (quotation marks and citations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Plaintiff's assertions of harmful error are without merit. Although the Court agrees that the ALJ erred in finding Plaintiff "did not require formal pain management to manage his back pain," that error is harmless because the ALJ gave other, valid justifications for finding Plaintiff's symptom testimony inconsistent with the record. *Carmickle*, 533 F.3d at 1162. First, Plaintiff's lack of medical treatment in 2013 and 2016 is a clear and convincing basis for rejecting Plaintiff's symptom testimony. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[A]n unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment . . . . can cast doubt on the sincerity of [a] claimant's [symptom] testimony."). Although the record indicates that Plaintiff lacked insurance coverage for part of 2013—which the ALJ acknowledged—there is no similar evidence for 2016. Tr. 31, 347. Additionally, the ALJ reasonably found that even without insurance coverage, Plaintiff's lack of emergency medical treatment was inconsistent with the alleged severity of his limitations. Tr. 31.

Second, "because a person's normal reaction is to seek relief from pain, and because modern medicine is often successful in providing some relief," Plaintiff's failure to "complete all of his group therapy pain management sessions or his aquatic physical therapy sessions" is also clear and convincing reason to discount his subjective pain testimony. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); Tr. 31; *see also* Tr. 28, 822, 824, 828, 1059-60, 1071.

Third, the ALJ did not err in finding that Plaintiff's psychological impairments responded well to treatment. The effectiveness of treatment is relevant to determining the severity of a claimant's symptoms, and an ALJ may properly rely on evidence of effective treatment to discount a claimant's alleged symptoms. 20 C.F.R. § 404.1529(c)(3)(iv)-(v); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). Contrary to Plaintiff's unadorned assertion that "the record shows ongoing severe symptomology and longitudinal decline in functioning," the ALJ

noted that Plaintiff's mental status examinations were generally normal and cited numerous instances where Plaintiff reported his medications were effectively treating his mental health symptoms. Pl. Br. 18, ECF 8; Tr. 29-30 (citing Tr. 898, 925, 1045); *see also* Tr. 580, 586, 704, 726, 837, 1007, 1017. Thus, the ALJ's finding of effective treatment is supported by substantial evidence and will not be disturbed.

Finally, Plaintiff's activities of daily living are a clear and convincing reason for discounting his symptom allegations. An ALJ may discount a claimant's testimony if it is inconsistent with the claimant's daily activities, or if the claimant's participation in everyday activities indicates capacities that are transferrable to a work setting. *Orn*, 495 F.3d at 639; *Molina*, 674 F.3d at 1112-13. Here, the ALJ reasonably found Plaintiff's reports of social anxiety, self-isolation, and an inability to sit for more than hour at a time was inconsistent with his ability to drive a cab for 12-hour shifts, sit for two and one-half hours at a time, and lift groceries for clients. Tr. 31, 448, 1078. Accordingly, the ALJ did not err in rejecting Plaintiff's subjective symptom testimony.

## III.    Lay Witness Testimony

Plaintiff argues the ALJ erred by giving reduced weight to the lay witness statements submitted by his wife Krista M. Tr. 33. "Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Molina*, 674 F.3d at 1114. The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine*, 574 F.3d at 694. The germane reasons must be specific. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing *Stout v. Comm'r, Social Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)).

The Court finds—and the Commissioner does not dispute—that the ALJ's rejection of Krista M.'s *lay*-statements on the basis that they were "not medical opinions and have not been given under oath" was erroneous. Tr. 33. However, where, as here, the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not described limitations beyond those already alleged by the claimant, the ALJ's failure to provide germane reasons for rejecting the lay testimony is harmless. *Molina*, 674 F.3d at 1121-22. As just explained, the ALJ gave several clear and convincing reasons for discounting Plaintiff's testimony. Because the ALJ's reasoning applies with equal force to Krista M.'s similar statements, the ALJ's error was harmless.

## IV.     Medical Opinion Evidence

Plaintiff argues that the ALJ erred in assigning reduced weight to the medical opinions of treating physician Raymond Baculi, MD, and non-examining physicians Ben Kessler, PhD, and Irmgard Friedburg, PhD. Social Security law recognizes three types of physicians: (1) treating, (2) examining, and (3) non-examining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). More weight should typically be given to an examining physician than to a non-examining physician. *Id*. "'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" *Id*. (quoting *Ryan v. Comm'r*, 528 F.3d 1194, 1198 (9th Cir. 2008)). When determining how much weight to give a medical opinion, the ALJ should consider the nature and extent of the physician's examining or treating relationship with the claimant, supportability of the opinion, consistency with the record as a whole, the specialization of the physician, and other relevant factors. 20 C.F.R. §§ 404.1527(c), 416.927(c).

///

### A.    Dr. Baculi

Plaintiff argues the ALJ failed to give legally sufficient reasons for giving "little weight" to the medical opinion of Dr. Baculi, Plaintiff's primary care physician since 2014. On January 15, 2018, Dr. Baculi completed a medical opinion form supplied by Plaintiff's counsel, noting the following: diagnoses of ADHD, anxiety, depression, PTSD, and lumbar disk disease; symptoms of back pain, easy fatiguability, difficulty concentrating, and decreased ambulation; limited to lifting 10 pounds occasionally and less than 10 pounds frequently; limited to standing and/or walking for 20 minutes at one time for a total of less than two hours in an eight-hour workday; limited to sitting for one hour at a time for more than six hours in an eight-hour work day; limitations in the upper and lower extremities; never able to climb, kneel, crouch, or crawl; occasionally able to balance, stoop/bend, and reach (both overhead and shoulder height); constantly able to handle, finger and feel; weakness, pain, and easy fatiguability limiting use of his extremities; attention and concentration deficits preventing him from performing even simple work tasks 20% of the time; and he would miss 16 hours or more work per month. Tr. 1111-14.

The ALJ noted that Dr. Baculi's one-hour sitting limitation was inconsistent with Plaintiff's reported ability to sit for two and one-half hours at a time. An ALJ may properly reject a medical opinion that is more limiting than the claimant's own reporting. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Plaintiff concedes the inconsistency but argues the ALJ failed to explain how the discrepancy contradicts the other disabling aspects of Dr. Baculi's opinion. Plaintiff's argument misses the point, however. Dr. Baculi's assessment that Plaintiff is more limited than even he alleges casts doubt on the veracity of the other limitations contained in the form, especially considering that Dr. Baculi's opinions are conclusory and poorly explained.

The ALJ also found Dr. Baculi's opinion was inconsistent with Plaintiff periodically working 12-hour shifts as a taxi driver. *See*, *e.g.*, Tr. 1019 (noting Plaintiff reported that "he continues[] working 12 hours a day driving a cab and then also does maintenance on them"). Inconsistency with a claimant's work activity is a proper reason to reject a medical opinion. *Valentine*, 574 F.3d at 692-93. Plaintiff argues the ALJ should not have relied on Plaintiff's part-time cab work because the ALJ found it did not rise to the level of substantial gainful activity; but that finding has no bearing on the inconsistency between Plaintiff's work and Dr. Baculi's medical opinion. Plaintiff working 12-hour shifts as a taxi driver and performing maintenance on the vehicles contradicts Dr. Baculi's assessment that Plaintiff is limited in the operation of hand and foot controls due to weakness, pain, and easy fatiguability; can never kneel, crouch, or crawl; and has deficits in attention and concentration to such a degree that he cannot perform even simple work tasks 20% of a workday. Thus, Plaintiff's part-time work activity was a sufficiently specific and legitimate reason for rejecting Dr. Baculi's opinion.

Finally, the ALJ did not err in finding Dr. Baculi's opinion was inconsistent with the medical evidence, including a May 2017 MRI showing multilevel mild diffuse disc bulge but no stenosis or neural involvement; Plaintiff's routine denials of pain radiating to his legs; his relatively conservative course of treatment involving oral medication and physical therapy, and the mostly normal physical examination findings documented at his physical therapy appointments. Tr. 29-30, 33, 753, 964, 986, 1037, 1040, 1042, 1045-46, 1066-67, 1106. Although Plaintiff points to some abnormal findings to advance his preferred reading of the evidence, variable interpretations of the medical record are insignificant where, as here, the ALJ's interpretation is reasonable and based on substantial evidence. *Batson v. Comm'r of Soc.*

*Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Accordingly, the ALJ did not err in giving little weight to Dr. Baculi's medical opinion.

### B.    Drs. Kessler and Friedburg

At the initial and reconsideration levels of Plaintiff's claim, Drs. Kessler and Friedburg both opined that Plaintiff was capable of only one-to-two-step tasks. Tr. 178, 196. The ALJ gave the reviewing psychologists' opinions "some weight" because the evidence suggested Plaintiff was "more limited" than they assessed. Tr. 32. The ALJ's RFC formulation, however, restricts Plaintiff to understanding, remembering, and carrying out "detailed but not complex instructions," and is therefore more demanding than the doctors opined. Tr. 22. As such, the ALJ's rejection of the one-to-two-step limitation without explanation was erroneous. *Garrison*, 759 F.3d at 1012-13 ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it[.]").

The Commissioner argues the Court should find the ALJ's error harmless because the reasons the ALJ gave for rejecting Dr. Baculi's opinion apply equally to the non-examining psychologists' opinions. The Commissioner's arguments, however, are impermissible post-hoc rationalizations that cannot form the basis for affirming the ALJ. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (a district court may not affirm an ALJ's decision based on "post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking") (citation omitted); *see also Brown-Hunter*, 806 F.3d at 492 ("A clear statement of the agency's reasoning is necessary because [the Court] can affirm the agency's decision to deny benefits only on the grounds invoked by the agency.") (citing *Stout*, 454 F.3d at 1054. Thus, the Court cannot find the ALJ's rejection of Drs. Kessler and Friedburg's limitation to one-to-two-step tasks harmless.

V.    **Step Five**

Plaintiff's step-five arguments primarily rely on his earlier assertions of error. As just explained, the ALJ committed harmful error in his rejection of the reviewing psychologists' medical opinions. At step five, "the Commissioner has the burden 'to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations.'" *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)). An ALJ may rely on the testimony of a vocational expert ("VE") to determine whether a claimant can perform other work in the national or regional economy. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The ALJ is required to include only those limitations which are supported by substantial evidence in any hypotheticals posed to the VE. *Id.* at 1163-65. "Conversely, an ALJ is not free to disregard properly supported limitations." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). If the hypothetical questions presented to the VE are not supported by substantial evidence, "the vocational expert's opinion has no evidentiary value." *Apfel*, 236 F.3d at 518.

Because the ALJ failed to adopt or properly reject the non-examining psychologists' limitation to one-to-two-step tasks, the RFC determination, as well as the hypothetical presented to the VE that was based on that RFC, are not supported by substantial evidence. Tr. 85-86. Thus, the VE's testimony has no evidentiary value. *Apfel*, 236 F.3d at 518. Accordingly, the ALJ did not meet the Commissioner's step-five burden and this case must be remanded for further proceedings.[3]

---

[3] The Court need not address Plaintiff's assertion that this case should be remanded for an immediate payment of benefits. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 935, 929 (9th Cir. 2003) (noting a "bare assertion of an issue does not preserve a claim" and a court will "review only issues which are argued specifically and distinctly") (citations omitted).

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for administrative proceedings.

IT IS SO ORDERED.


DATED:____March 1, 2021_____.


_____
MARCO A. HERNÁNDEZ
United States District Judge